1
2
3
4
5
6
7

8           **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   BRANDON MICHAEL LANDRETH,              No.  2:20-CV-00472-DMC-P

12                    Plaintiff,

13        v.                                 ORDER

14   BHUPINDER LEHIL, et al.,

15                    Defendants.

16

17              Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18   42 U.S.C. § 1983.  Pending before the Court are Plaintiff's motions relating to discovery

19   propounded to Defendants Posson, Carrick, and Lehil, ECF Nos. 66, 69, 81, 95, 97.[1]

20              The purpose of discovery is to "remove surprise from trial preparation so the

21   parties can obtain evidence necessary to evaluate and resolve their dispute." United States v.

22   Chapman Univ., 245 F.R.D. 646, 648 (C.D. Cal. 2007) (quotation and citation omitted). Federal

23   Rules of Civil Procedure offers guidance on the scope of discovery permitted:

24                 Parties may obtain discovery regarding any nonprivileged information that
                   is relevant to any party's claim or defense and proportional to the needs of
25                 the case, considering the importance of the issues at stake in the action, the
                   amount in controversy, the parties' relative access to relevant information,
26                 the parties' resources, the importance of the discovery in resolving the
                   issues, and whether the burden or expense of the proposed discovery
27

28        [1]       Plaintiff's discovery motions at ECF Nos. 95 and 97 will be addressed separately.

                                              1

outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Under Rule 37 of the Federal Rules of Civil Procedure, "a party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). The court may order a party to provide further responses to an "evasive or incomplete disclosure, answer, or response." Fed. R. Civ. P. 37(a)(4). "District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.'" Hunt v. County of Orange, 672 F.3d 606, 616 (9th Cir. 2012) (quoting Avila v. Willits Envtl. Remediation Trust, 633 F.3d 828, 833 (9th Cir. 2011)).

The party moving to compel bears the burden of informing the court (1) which discovery requests are the subject of the motion to compel, (2) which of the responses are disputed, (3) why the party believes the response is deficient, (4) why any objections are not justified, and (5) why the information sought through discovery is relevant to the prosecution of this action. McCoy v. Ramirez, No. 1:13-cv-1808-MJS (PC), 2016 U.S. Dist. LEXIS 75435, 2016 WL 3196738, at *1 (E.D. Cal. June 9, 2016); Ellis v. Cambra, No. 1:02-cv-5646-AWI-SMS PC, 2008 U.S. Dist. LEXIS 24418, 2008 WL 860523, at *4 (E.D. Cal. Mar. 27, 2008). The party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Bryant v. Ochoa, No. 07cv200 JM (PCL), 2009 U.S. Dist. LEXIS 42339, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) (internal citation omitted).

## I. SUMMARY OF PENDING DISCOVERY MOTIONS

The various pending motions relating to discovery and relief requested are:

ECF No. 66 Plaintiff's motion for sanctions and to compel discovery – Plaintiff seeks an order awarding sanctions against Defendant Posson for failure to comply with a prior discovery order; Plaintiff also seeks an order compelling further discovery responses from Defendant Posson. Plaintiff has filed an "addendum" to his motion. See ECF No. 70.  Defendants oppose Plaintiff's motion.  ECF No.

1    71 ("Motion 1").

2    ECF No. 69    Plaintiff's motion to compel and for an extension of time
                   to conduct discovery – Plaintiff asks the Court to
3                  reconsider its prior discovery order of February 14, 2022;
                   Plaintiff also seeks an order modifying the pre-trial
4                  schedule to allow for additional time to conduct discovery.
                   Defendants have responded to Plaintiff's motion.  ECF
5                  No. 72 ("Motion 2").

6    ECF No. 81    Plaintiff's motion to compel discovery – Plaintiff seeks an
                   order compelling further discovery responses from
7                  Defendant Carrick.  Plaintiff separately filed exhibits in
                   support of this motion.  See ECF No. 83.  Defendants
8                  oppose Plaintiff's motion.  ECF No. 89 ("Motion 3").

9

10                              **II. DISCUSSION**

11           The Court previously addressed Plaintiff's motion to compel further responses to

12   discovery propounded to Defendants Posson, Carrick, and Lehil on February 14, 2022.  See ECF

13   No. 53.  Defendants Posson and Carrick were ordered to provide further discovery responses to

14   some, but not all, of Plaintiff's discovery request.  See id.  The Court did not at that time order

15   Defendant Lehil to provide any further responses.  See id.  Now before the Court are Plaintiff's

16   additional motions related to discovery propounded to Defendants Posson, Carrick, and Lehil.

17   See ECF Nos. 66, 69, and 81.  Defendants oppose.  See ECF Nos. 71, 72, and 89.

18       A.    **Motion 1 (ECF No. 66)**

19           Plaintiff argues in Motion 1 that, despite this Court ordering Defendant Posson to

20   respond to interrogatory numbers 3, 6, and 17, and requests for admissions number 7, he has

21   failed to do so.  See ECF NO. 66, pg. 1.  Plaintiff claims that Defendant Posson's further

22   responses to Plaintiff's interrogatories are "evasive, incomplete, unintelligible, and unresponsive"

23   and that his further response to Plaintiff's request for admissions is simply "false."  Id., pgs. 1-2.

24   Plaintiff requests that sanctions be awarded against Defendant Posson for his failure to

25   sufficiently respond and requests the Court require Defendant Posson to supplement his responses

26   further.  See id., pg. 12.  For the below reasons, the Court denies Plaintiff's Motion 1.

27   / / /

28   / / /

                                      3

1    1.    <u>Interrogatories</u>

2         a.    <u>No. 3</u>

3    **Interrogatory No. 3**:  In the "Institution Level Response" to Plaintiff's
     Health Care Grievance, Tracking #CTF HC 18000861, you denied
4    Plaintiff's request for transition lenses, stating, "You do not meet the
     criteria and transition lenses are not currently clinically indicated." To the
5    best of your ability, please explain the criteria for transition lenses as
     thoroughly as possible. a) Please name the individual(s) by whom said
6    criteria was developed.  ECF No. 71, pg. 3.

7    **Defendant Posson's response**: Responding party objects to this request
     on the grounds that it is compound, and seeks information that is equally
8    available to Plaintiff. Without waiving these objections, on August 27,
     2018, Plaintiff received an optometry consultation and the optometrist
9    provided education that transition lenses were not medically indicated.  <u>Id.</u>

10   **Court's Prior ruling**:  Defendant's objections are overruled. The
     interrogatory is not compound, nor is the information equally available to
11   Plaintiff. Additionally, Defendant was not responsive to the interrogatory.
     Defendant Posson shall serve a supplemental response to interrogatory No.
12   3.  ECF No. 53, pg. 5.

13   **Defendant Posson's further response**: Without waiving any objections,
     the criteria were developed by Dr. J. Carrick and members of the
14   Headquarters Durable Medical Equipment Committee.  ECF No. 71, pg. 3.

15   **Defendant Posson's supplemental further response**: Without waiving
     any objections, the Defendant's understanding of the criteria for
16   prescribing transition lenses follows: transition lenses may be clinically
     indicated for patients with photokeratitis and degenerative retinal diseases
17   who require ultra violet ray exclusion and/or decreased visible light
     intensity and who cannot be better accommodated through the use of
18   prescription clear corrective lenses constructed out of a high refractive
     index plastic that intrinsically filters out ultra violet radiation, standard
19   sunglasses, and/or over-the-glasses sunglasses ("cocoons"). Transition
     lenses and prescription clear lenses block ultraviolet light coming from the
20   front of the visual field only, and do not block ultraviolet light from the
     sides, bottom, or top of the visual field. But, "cocoons" block incoming
21   ultraviolet light from the top, bottom, sides, and front of the visual field
     and are superior for patients who require ultra violet ray reduction from
22   the top, bottom, and/or sides of the visual field, which encompasses most
     patients. Transition lenses decrease visible light intensity but take time to
23   adjust to changing light conditions, such as when a patient moves from
     outdoors to indoors, or from indoors to bright sunlight. Patients who
24   require immediate adjustment to changes in light intensity in order to
     provide increased safety and decreased chances of colliding with other
25   persons or objects may be better served with "cocoons," which can be
     used the moment the patient moves to an area with different light
26   intensity. The criteria were developed by Dr. J. Carrick and members of
     the Headquarters Durable Medical Equipment Committee.  <u>Id.</u>, pgs. 4-5.

27

28   / / /

                                    4

1    Plaintiff argues that Defendant Posson's response is "vague, evasive,

2   contradictory" and fails to address the interrogatory.  ECF No. 66, pg. 4.  Plaintiff asserts that

3   there is a "secret CDCR document," which establishes "the criteria for transition lenses," but that

4   every effort to obtain it through discovery "has been met with denials that such criteria exist and

5   denials that any documents listing said criteria exist." Id.  Plaintiff then challenges the substance

6   of Defendant Posson's response, arguing that it is "laughable" and Defendant Posson is making a

7   "mockery of the Court and insulting the intelligence of any human being" as to, among other

8   things, the meaning of "refraction" used in Defendant Posson's response.  Id., pgs. 4-6.  Lastly,

9   Plaintiff claims that Defendant Posson has told Plaintiff "nothing regarding the criteria for

10   prescribing transition lenses." Id., pg. 6.

11    Defendant Posson argues that the interrogatory requested him to "explain" the

12   criteria for transition lenses and he did, "thoroughly and completely." ECF No. 71, pg. 4.

13   Defendant Posson further argues the supplemental further response explained when a prescription

14   would and would not be appropriate.  See id.  Defendant Posson's primary argument is that

15   Plaintiff asked him to "explain" the criteria, rather than "state the criteria in verbatim." Id., pgs. 4-

16   5.  Thus, according to Defendant Posson, Plaintiff speculates another set of criteria "may exist,"

17   but does not provide any evidence in support.  Id., pg. 4.

18    Defendant Posson has explained the criteria for prescribing transition lenses; in

19   other words, transition lenses may be clinically indicated for those patients: "with photokeratitis

20   and degenerative retinal diseases who require ultraviolet ray exclusion and/or decreased visitable

21   light intensity" and who cannot be adequately treated with "prescription clear corrective lenses,

22   standard sunglasses," and/or cocoons.  The additional information provided by Defendant Posson

23   elaborates on why cocoons may be preferred to other treatments. Thus, Defendant Posson has

24   fully responded to interrogatory number 3.

25    To the extent Plaintiff argues that Defendant Posson's response to interrogatory

26   number 3 is "laughable," Defendant Posson is not required to prove the acceptability of his

27   response—only explain it.  A motion to compel is not the appropriate vehicle in which to argue

28   the overall merits of the case. Hoffman v. Jones, No. 2:15-CV-1748-EFB P, 2017 WL 5900086,

1   at *8 (E.D. Cal. Nov. 30, 2017), report and recommendation adopted, No.

2   215CV1748MCEEFBP, 2018 WL 497370 (E.D. Cal. Jan. 22, 2018).

3           Thus, because the Court finds that Defendant Posson has adequately responded, no

4   further response is required and Plaintiff's Motion 1 as to interrogatory number 3 is denied.

5                    b.    No. 6

6 / 7   **Interrogatory No. 6:**  Please explain why you do or do not believe pigmented/tinted lenses are medically necessary for patients diagnosed with intermittent bilateral HSV keratitis.  ECF No. 71, pg. 5.

8 / 9 / 10   **Defendant Posson's response**: Responding party objects to this request on the grounds that it is overly broad, presumes as true facts that have not been established, lacks foundations, and is an incomplete hypothetical. Without waiving these objections, there are instances when such lenses may be medically necessary for patients.  Id.

11 / 12 / 13 / 14   **Court's Prior ruling**:  Defendant's objections are overruled. Plaintiff's interrogatory is not overly broad, does not presume as true facts that have not been established, does not lack foundation, and is not an incomplete hypothetical. Defendant Posson adds that "there are instances when such lenses may be medically necessary for patients." However, Defendant does not "explain why" [Defendant] believes that. Defendant Posson shall serve a supplemental response to interrogatory No. 6.  ECF No. 53, pg. 6.

15 / 16 / 17 / 18 / 19 / 20   **Defendant Posson's further response**: Without waiving any objections, the determination whether pigmented/tinted lenses are medically necessary is made on a case-by-case basis. Modern eyewear corrective lenses are constructed out of a high refractive index plastic that intrinsically filters out ultra violet radiation. Consequently, the medical need of filtering out harmful radiation frequently can be accomplished with sunglasses obtained from approved vendors via the quarterly package process. If the harmful radiation can be addressed with these sunglasses, pigmented/tinted lenses would not be medically necessary.  ECF No. 71, pgs. 5-6.

21           Plaintiff asserts that Defendant Posson did not sufficiently respond to interrogatory

22   number 6, contrary to this Court's order to do so. See ECF Nos. 66, pg. 7 & 70, pg. 1; see also

23   ECF No. 53, pg. 6.  Plaintiff argues that Defendant Posson instead explains "why he does not

24   believe" transition lenses may be medically necessary. ECF 70, pg. 1.   Plaintiff further argues

25   that Defendant Posson's statement that "the determination whether pigmented/tinted lenses are

26   medically necessary is made on a case-by-case basis" runs contrary to "Utilization Management

27   CDCR policy" because the Utilization Management Program shall "implement evidence based

28   medical necessity criteria statewide" and shall ensure 'standardized processes and prescribing

1   practices' relative to durable medical equipment such as prescription eyeglasses." See ECF 66,

2   pg. 7.  Plaintiff then argues as to the merits of Defendant Posson's response.  See id., pgs. 8-9.

3   Lastly, Plaintiff claims that because there are 546 pages of emails "disucc[ing] transition lenses

4   and herpes simplex keratitis/ocular herpes" identified in response to Plaintiff's PRA request that

5   Defendant Posson's response that "pigmented/tinted lenses are medically necessary is made on a

6   case-by-case basis" is false. Id., pg. 9 ("[a]re we to believe that no criteria – no determination of

7   medical necessity – has been established by CCHCS/CDCR throughout the course of a 546 page

8   discussion").

9            Defendant Posson asserts that his response is full and complete because he

10  explained that the "construction of modern lenses adequately filers out ultra violet radiation" such

11  that pigmented/tinted lenses are not warranted. ECF No. 71, pg. 5.  Defendant Posson contends

12  that "implicit in his response" is that "if the harmful radiation cannot be addressed in this way,

13  pigmented/tinted lenses may be medically necessary." Id.  Further, Defendant Posson maintains

14  that Plaintiff has failed to demonstrate that the response was inadequate, only that Plaintiff

15  disagrees with the response.  Id., pgs. 5-6.

16           The Court finds no further response is required.  In the Court's prior order

17  regarding this interrogatory, the Court found that Defendant Posson did not explain when

18  transition lenses may be medically necessary and ordered a further response.  Defendant Posson

19  has now responded and explained that the determination of whether transition lenses should be

20  prescribed is made on a case-by-case basis; relevant to that determination is whether the filtering

21  of harmful radiation can be accomplished by other treatment, such as sunglasses; if treatment by

22  alternative methods can filter harmful radiation, then transition lenses are not medically

23  necessary.  Plaintiff inasmuch concedes that Defendant Posson has explained in his response why

24  "he does not believe such lenses may be medically necessary," ECF No. 70, pg. 1, and thus

25  responds Plaintiff's interrogatory.

26           With respect to Plaintiff's arguments as to the substance of Defendant Posson's

27  response or his claims that Defendant Posson's response is false because there are 546 pages of

28  emails discussing transition lenses and herpes simplex keratitis/ocular herpes—so there must be

1    criteria established, such claims are not appropriate here.  Discrepancies between facts and

2    evidence is not a basis to compel a further response or to attempt to force a party to change a

3    response; rather, it is fodder for a party to attempt to impeach a witness or to contradict testimony

4    at trial and/or dispositive motion.  See Jacobs v. Quinones, No. 1:10-CV-02349-AWI-JL, 2015

5    WL 3717542, at *8 (E.D. Cal. June 12, 2015); see Hoffman, 2017 WL 5900086, at *8.

6           Therefore, because the Court finds that Defendant Posson has responded, no

7    further response to this interrogatory is required and Plaintiff's Motion 1 as to interrogatory

8    number 6 is denied.

9                        c.      No. 17

10       **Interrogatory No. 17**: What kind of clarification, instruction, or
         correction did you give to Defendant Ottenbacher relative to the
11       implementation of the policy referenced in the December 15, 2015
         Memorandum as concerns the prescribing of transition lenses?  ECF No.
12       71, pg. 6.

13       **Defendant Posson's response**: Responding party did not speak with Dr.
         Ottenbacher regarding Plaintiff's treatment.  Id.
14

15       **Court's Prior ruling**:  The potential communications that could be
         responsive to this interrogatory are not limited to "speaking". As such, this
16       Court finds the response incomplete and evasive, and orders Defendant []
         to supplement this response with specifics of whether Defendant provided
17       any "Clarification, instruction or correction" to [Ottenbacher] on the
         matters at issue.  ECF No. 53, pg. 6.

18       **Defendant Posson's further response**: The responding party did not
         speak with Dr. Ottenbacher regarding Plaintiff's treatment. The
19       responding party provided Dr. Ottenbacher with a copy of the December
         15, 2015 Memorandum.  ECF No. 71, pg. 6.
20

21          Plaintiff argues that Defendant Posson has "in no way whatsoever" responded to

22   the interrogatory, in contravention of this Court's order, because the interrogatory "presumes as

23   true the fact that Defendant Ottenbacher already possessed the December 15, 2015,

24   memorandum." ECF No. 66, pg. 10.  Plaintiff claims that Defendant Posson "does not want to

25   admit or deny Defendant Ottenbacher's claim that Defendant Posson forbid him from prescribing

26   transition lenses." Id. pgs. 10-11. Plaintiff contends that, if it's Defendant Posson's position that

27   there were no clarifications, instructions, or corrections given to Defendant Ottenbacher, then "he

28   should be required to answer and swear to it." Id., pg. 11.

Defendant Posson argues that his further response complies with this Court's order because it "explains all instructions provided to Dr. Ottenbacher." ECF No. 71, pg. 6.  Defendant Posson claims that he described all communications he had with Dr. Ottenbacher by responding that he provided a copy of the December 15, 2015, memorandum. See id.

The Court finds no further response is required.  First, Defendant Posson did communicate a "clarification, instruction, or correction" to Defendant Ottenbacher by way of providing the December 15, 2015, memorandum to him.  Thus, requiring Defendant Posson to respond, "that there were no clarifications, instructions, or corrections given to Defendant Ottenbacher," would be to require Defendant Posson to make a false representation. Second, there is nothing in the way of this interrogatory that presumes that Defendant Ottenbacher already possessed the December 15, 2015, memorandum.  Third, Defendant Posson has fully responded to the interrogatory by stating that he didn't speak to Defendant Ottenbacher, but he did provide the December 15, 2015, memorandum to him.  Defendant Posson need not indicate that this was the only communication to Defendant Ottenbacher because this is implicit in his response.  Finally, signed discovery responses are certifications that, to the best of the person's knowledge, information and belief formed after a reasonable inquiry, the responses are correct.  See Fed. R. Civ. P. 26(g)(1)(B); Logtale, Ltd. v. IKOR, Inc., 2013 WL 3967750, at *2 (N.D. Cal. 2013).  Thus, Defendant Posson does need not further "answer and swear" as his signed discovery responses are made under oath.  Because the Court finds that Defendant Posson has fully responded, no further response to is required and Plaintiff's Motion 1 as to interrogatory number 17 is denied.

2.      Requests for Admissions

**Request For Admission No. 7**: Do you admit that the use of transition lenses limits a person's exposure to UV light more than the use of untinted/unpigmented prescription lenses?  ECF No. 71, pgs. 6-7.

**Defendant Posson's response**: Responding party objects to this request on the grounds that it is an incomplete hypothetical, and calls for speculation. Without waiving these objection, responding party has made a reasonable inquiry but the information known or readily obtained is insufficient to enable him to admit or deny the request.  Id.

**Court's Prior ruling**:  Defendant's objections are overruled. Plaintiff's

9

1

2

3

request is not an incomplete hypothetical and does not call for speculation. Further, it appears clear that Defendant Posson would have sufficient information to admit or deny the request. Therefore, Defendant Posson shall serve a supplemental response to request for admission No. 7. ECF No. 53, pg. 8.

4

5

**Defendant Posson's further response**: Without waiving any objections, the responding party denies the request. ECF No. 71, pg. 7.

6

Plaintiff states that he "will not insult" the Court's "intelligence by presuming to explain why Defendant Posson's denial is an outrageous lie and a mockery of the Court's order." ECF No. 66, pg. 11. Plaintiff claims Defendant Posson's response is a "bald-faced lie" because he denies that "tinted lenses limit a person's exposure to UV light more than clear plastic lenses." Id., pgs. 11-12.

7

8

9

10

11

12

13

14

15

Defendant argues that Plaintiff's assertions as to the credibility of Defendant Posson's response are inappropriate and that Plaintiff has provided no substantive evidence demonstrating Defendant Posson's response is improper. See ECF No. 71, pg. 7. Defendant maintains that a motion to compel is not the means in which to challenge the accuracy of a request for admission and that Rule 36 does not authorize the court to make a determination on such matters before trial. See id.

16

17

18

19

20

21

22

23

24

The Court finds no further response is required. Rule 36 of the Federal Rules of Civil Procedure provides that "[i]f a matter is not admitted, the answer must specifically deny it," which is exactly what Defendant Posson did here. Requests for admission do not provide a party a vehicle to establish disputed facts. See Jefferson v. Perez, 2012 WL 671917 at *1 (E.D. Cal. 2012). Rule 36 also does not authorize a court to determine the accuracy of a denial. Owens v. Degazio, No. 216CV2750JAMKJNP, 2019 WL 4929812, at *5 (E.D. Cal. Oct. 7, 2019). Because Defendant Posson has fully satisfied the requirements of Rule 36 by specifically denying such request, no further response is required and Plaintiff's Motion 1 as to request for admission number 7 is denied.

25

/ / /

26

/ / /

27

/ / /

28

1    3.    Sanctions

2           Sanctions are unwarranted here because Defendant Posson has complied with the

3    Court's Order and no further responses are required.  Thus, Plaintiff's request for sanctions is

4    denied.

5    **B.**    **Motion 2**

6           Generally, Plaintiff argues in Motion 2 that based on a response from California

7    Correctional Health Care Services, pursuant to a Public Records Act request ("PRA response"),

8    see ECF No. 69, pgs. 13-15, additional documents exist, which would make discovery responses

9    from Defendants Carrick and Posson incorrect and incomplete.  Some of these requests were the

10   subject of Plaintiff's former motion to compel this Court previously resolved.  See ECF No. 53.

11   Plaintiff requests in Motion 2 (1) an order voiding this Court's prior order and requiring further

12   responses from Defendants Carrick and Posson; (2) an order to compel further responses by

13   Defendants Carrick and Posson to certain discovery requests not at issue in the previous motion;

14   (3) an order granting Plaintiff an additional three interrogatories and three requests for production

15   as to Defendants Carrick and Posson; and (4) an order extending discovery deadlines.  For the

16   following reasons, the Court grants in part and denies in part Plaintiff's Motion 2.

17         1.    Order Voiding Previous Order and Compelling Further Responses

18              a.    Defendant Carrick

19                   i.    Request for Production No. 1

20   **Request for Production No. 1**:  Plaintiff requests that Defendant Carrick
     produce any and all documents presented and/or discussed at the
21   California Correctional Health Care Services (CCHCS) Headquarters
     Durable Medical Equipment (DME) Committee on October 26, 2015
22   pertaining to eyeglass prescription lenses. ECF No. 72, pg. 4.

23   **Defendant Carrick's response**: Responding party is not in possession,
     custody, or control of documents responsive to this request. Id.
24
     **Court's Prior ruling**:  The Court finds no basis to order any further
25   response.  ECF No. 53, pg. 10.

26         Plaintiff argues that, in his position as Deputy Medical Executive of Utilization

27   Management, and author of the December 15, 2015, memorandum, "one can rest assured that

28   [Defendant Carrick] is, indeed, in control of said documents." See ECF No. 69, pgs. 3-4. On that

                                         11

premise, he asserts that Defendant Carrick does not deny that such records exist, only that he does not have possession, custody, or control of such records.  See id., pg. 4.  Defendant Carrick argues that, as Plaintiff concedes, the records of such committee meetings are only kept for three years, and that since the committee meeting occurred on October 26, 2015, the records of that meeting would not have been in existence after October 26, 2018—long before Defendant Carrick's response in 2021.  See ECF Nos. 72, pg. 4 & 69, pg. 4.  On reply, Plaintiff argues that Defendant Carrick's submission of a privilege log designating certain emails regarding draft Committee position on transition lenses and Committee minutes privileged show that Defendant is false in his statement that no documents exist after three years.  See ECF No. 78, pgs. 1-2.

After further consideration, the Court finds a supplemental response is required. Rule 34 requests may be used to inspect documents, tangible things, or land in the possession, custody, or control of another party. A party is deemed to have control over documents if he or she has a legal right to obtain them.  Allen v. Woodford, No. CVF051104OWWLJO, 2007 WL 309945, at *6 (E.D. Cal. Jan. 30, 2007), modified on reconsideration, No. 1:05-CV-1104 OWW NEW, 2007 WL 9747771 (E.D. Cal. Mar. 16, 2007) (quoting In re Flag Telecom Holdings, Ltd. Sec. Litig., 236 F.R.D. 177, 181 (S.D.N.Y.2006) (rejecting the defendant's argument that documents belonged to his employer and holding "employees are permitted to utilize the documents in the course of employment, as they must in order to perform their jobs, and therefore [defendant] has the practical ability to obtain them")).

A party responding to a document request is under an affirmative duty to seek information reasonably available to him from his employees, agents, or others subject to his control, not just that information within his immediate knowledge or possession.  Meeks v. Parsons, No. 1:03–cv–6700–LJO–GSA, 2009 WL 3003718, *4, (E.D. Cal. Sept. 18, 2009); Courts have assumed that a party has "control of documents in the possession of another and ordered the party to produce relevant documents. See Zackery v. Stockton Police Dep't, No. CIV S–05–2315 MCE DAD P, 2007 WL 1655634, *3-4, (E.D. Cal. June 7, 2007) ("directing" counsel for defendants to obtain and produce records in possession of current employer, the Stockton Police Department).

If a defendant has constructive control over the documents requested, then the defendant is in possession, custody, or control of the documents.  See Hunter v. Ogbuehi, No. 113CV01681DADGSAPC, 2018 WL 1243421, at *10-11 (E.D. Cal. Mar. 9, 2018); Pulliam v. Lozano, No. 1:07–cv–964–LJO–MJS, 2011 WL 335866 (E.D. Cal. Jan. 31, 2011); Mitchell v. Adams, No. CIV S–06–2321 GEB GGH, 2009 WL 674348, *9 (E.D. Cal. Mar. 6, 2009) (finding even though defendant warden was sued in individual capacity, he had constructive control over requested documents because he had authority to obtain requested documents from CDCR).

A party has an obligation to conduct a reasonable inquiry into the factual basis of his responses to discovery.  Perkins v. City of Modesto, No. 119CV00126LJOEPG, 2020 WL 1333109, at *9 (E.D. Cal. Mar. 23, 2020) (finding party has obligation to exercise due diligence and make a reasonable inquiry to determine whether responsive documents exist).  Based on that inquiry, a party responding to a request for production is under "'an affirmative duty to seek that information reasonably available' to it and make an appropriate production of responsive documents.'" Hartline v. Nat'l Univ., No. 2:14-CV-00635-KJM-AC, 2018 WL 1014611, at *3 (E.D. Cal. Feb. 22, 2018) (quoting Gray v. Faulkner, 148 F.R.D. 220, 223 (N.D. Ind. 1992); Kaur v. Alameida, 2007 WL 1449723, *2 (E.D. Cal. May 15, 2007) (ordering defendants to conduct additional research for responsive documents and reminding defendants and counsel "of their duty under Rule 34 to conduct a diligent search and reasonable inquiry in effort to obtain responsive documents").

If no responsive documents or tangible things exist, the responding party should so state with sufficient specificity to allow a court to determine whether the party made a reasonable inquiry and exercised due diligence.  Uribe v. McKesson, No. 08cv1285 DMS (NLS), 2010 WL 892093, at *2-3 (E.D. Cal. Mar. 9, 2010); Rogers v. Giurbino, 288 F.R.D. 469, 485 (S.D. Cal. 2012) ("A party must make a reasonable inquiry to determine whether responsive documents exist, and if they do not, the party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence.").  If responsive documents exist but the responsive party claims lack of possession, control, or custody, the party must so state with sufficient specificity to allow the court (1) to conclude that

13

the responses were made after a case-specific evaluation and (2) to evaluate the merit of that response. Ochotorena v. Adams, No. 1:05–cv–01525–LJO–DLB (PC), 2010 WL 1035774, at *3-4 (E.D. Cal. Mar. 19, 2010).

To begin with, Defendant Carrick's response only states that he does not have possession, custody, or control of such documents; however, in his opposition, he argues that, because of CCHCH's policy that records of committee proceedings are only kept for three years, he would not be in the possession of such records. See ECF N. 72, pg. 4. While this assertion may be true, such was not his response. Furthermore, Defendant Carrick did not respond that he made a diligent and reasonable inquiry into such matters. Defendant Carrick has an affirmative duty to determine whether any documents exist and, from his response, the Court is unable to ascertain whether he performed that inquiry. Defendant Carrick's response is thus incomplete.

Additionally, the documents presented or discussed at the October 26, 2015, meeting pertaining to eyeglass prescription lenses and which form the basis for the CCHCH memorandum would seem to be within the possession, custody or control of Defendant in his employment relationship with CCHCH. Defendant is the Deputy Medical Executive for CCHCH and author of the memorandum. It is this Court's experience that individual defendants who are employed by CCHCH and who are represented by the Attorney General can generally obtain documents, such as the ones at issue here, by requesting them. Defendant thus has constructive control over the requested documents and the documents must be produced, if they exist. If, after a diligent and reasonable inquiry, the documents no longer exist, Defendant Carrick should so state in his response.

Lastly, with respect to Plaintiff's argument that Defendant Carrick is lying that no documents exist because he produced a privilege log identifying an email attachment containing a draft Committee Position and email attachment containing various committee minutes, it is not clear to the Court whether such documents are responsive to Plaintiff's request for "documents presented and/or discussed" at the Committee meeting. Minutes reveal what was discussed at a meeting, but the minutes themselves are generally not a document that is "presented and/or discussed" at the meetings. Similarly, a draft of the Committee position does not necessarily

mean that the draft, itself, was "presented and/or discussed" at the meeting. The mere fact the

email was dated November 19, 2015, almost a month after the Committee meeting, suggests that

the draft was a result of the meeting, not a document, itself, presented or discussed at the meeting.

To the extent Plaintiff argues on reply that Defendant Carrick's "deliberative process" privilege is

also inappropriate, such argument is not properly before the Court. The Court thus declines to

consider that matter here.

The Court finds that Defendant Carrick's response that "responding party is not in

possession, custody, or control of documents responsive to this request" is not a complete

response. On that basis, the Court grants Plaintiff's Motion 2 as to Plaintiff's Request for

Production No. 1. Defendant Carrick is ordered to (1) produce responsive documents to this

request, to the extent such documents exist; (2) supplement his response with such information as

defendant has, if any, as to who has possession, custody, or control of such documents so that

Plaintiff may act accordingly, and if such document exist, or (3) supplement his response to

indicate that after a reasonable and diligent inquiry, no such documents exist because they never

existed or have been destroyed. Defendant Carrick shall serve further responses to this request

within thirty days of the date of this order.

ii.      Interrogatory No. 10

**Interrogatory No. 10**:  Please identify what clinical case exceptions have been established for transition lenses [and] (a) briefly explain why transition lenses are medical [sic] necessary for each of the identified clinical case exceptions. ECF No. 72, pg. 5.

**Defendant Carrick's response**: There are no clinical case exceptions as the determination to prescribe transition lenses in [sic] made on a case by case basis, and is left to the medical judgment of Plaintiffs treating physicians. Id.

**Court's Prior ruling**:  The Court finds no basis to order any further response to this interrogatory.  ECF No. 53, pg. 11.

Plaintiff argues that Defendant Posson's further response to interrogatory No. 3

contradicts Defendant Carrick's response to this request. See ECF No. 69, pgs. 4-6.  Plaintiff

asserts that Defendant Posson identifies criteria, established by Defendant Carrick, such that

"transition lenses may be clinically indicated for patients with photokeratitis and degenerative

15

retinal diseases who require ultra violet ray exclusion and/or decreased visible light intensity."

Id., pg. 5.  Plaintiff argues this statement is contrary to Defendant Carrick's response, that no

clinical case exceptions exist because the decision of whether or not to prescribe transition lenses

is left to individual's treating physicians.  Further, Plaintiff claims that the Utilization

Management Program, of which Defendant Carrick is the Deputy Medical Executive, shall

"implement evidence-based medical necessity criteria statewide" and that Defendant Carrick, in

his position, shall "develop and ensure adherence to the UM program policy and procedure and

clinical criteria that define medical necessity." ECF No. 69, pgs. 5-6.  According to Plaintiff,

Defendant Carrick is "responsible for developing said criteria" and that Defendant Posson's

further response confirms that such criteria has, in fact, been established by him. Id., pg. 6; see

also ECF No. 69, pgs. 28-29.

Defendant Carrick argues that Plaintiff merely disagrees with his response and that

it is not inconsistent with Defendant Posson's further discovery responses.  Cf. ECF No. 72, pg. 5

with ECF No. 69, pgs. 28-29.  Defendant Carrick claims that his response of "no hard and fast

exceptions exist because the decision is made on a case-by-case basis according to the judgment

of the treating physician" is virtually the same as Defendant Posson's response that "transition

lenses may be indicated in some cases but not others." Id.

The Court finds no inconsistency between the two responses.  Plaintiff requests

from Defendant Carrick the identification of any "clinical case exceptions," while he requests

from Defendant Posson, in pertinent part, to "please explain the criteria for transition lenses . . . ."

Cf. ECF No. 72, pg. 5 with ECF No. 69, pgs. 28-29.  Plaintiff does not request the same

information from Defendant Carrick that he does from Defendant Posson.  In this Court's

opinion, a "clinical case exception" is not the same as a "criteria."  An exception is "something

that is excluded from a rule's operation" while a criterion is a "standard, rule, or test on which a

judgment or decision can be based or compared; a reference point against which other things can

be evaluated."  Black's Law Dictionary (11th ed. 2019).  In other words, a criteria is a rule and an

exception is an acceptable deviation from that rule.  Thus, Plaintiff's request for the identification

of "any clinical case exceptions" cannot be read to be the same as the "criteria" for prescribing

transition lenses.  Because there are no inconsistencies between the responses of Defendants

Carrick and Posson, no further response is required by Defendant Carrick.  The Court denies

Plaintiff's Motion 2 with respect to requiring Defendant Carrick to further respond to

Interrogatory number 10.

b.   <u>Defendant Posson</u>

Like those arguments as to Defendant Carrick, Plaintiff argues that based on newly

acquired evidence, Defendant Posson's responses and document productions are incorrect and

incomplete.  <u>See</u> ECF No. 69, pgs. 6-10.  Plaintiff seeks a further response regarding Request for

Production numbers 5, 7, and 12. In opposition, Defendant Posson agreed to provide a further

response, "as appropriate," after "reviewing the emails referenced by Plaintiff."  ECF No. 72, pg.

1.  On June 29, 2022, Plaintiff filed a "further reply" arguing that Defendant Posson's further

responses, served June 16, 2022, were deficient. <u>See e.g.</u>, ECF No. 80, pgs. 1-2.  Because

Defendant Posson has already served his further responses, Plaintiff's motion to compel further

responses to Request for Production numbers 5, 7, and 12 is denied. Any argument by Plaintiff as

to the sufficiency of such responses is not properly before the Court and thus, the Court declines

to consider that matter here.[2]

2.   <u>Order Compelling Further Responses to Certain Discovery Requests</u>

a.   <u>Defendant Carrick</u>

**Interrogatory No. 6**:  Please describe what efforts, if any, you made to
further clarify your expectation with respect to the implementation of the
policy referenced in your December 15, 2015 Memorandum, relative to
the  prescribing of transition lenses. ECF No. 72, pg. 2-3.

**Defendant Carrick's response**: Responding party does not believe that
there was a need for clarification.  <u>Id.</u>

Plaintiff argues that based on new evidence from the PRA response, Defendant

Carrick has sent 67 pages of emails concerning "the prescribing of, or criteria for prescribing of,

or policy relative to the prescribing of transition lenses." ECF No. 69, pgs. 3, 13-15.  It appears

---

[2]   Local Rule 230(m) states, in pertinent part, "[a]fter a reply is filed, no additional
memoranda, papers, or other materials may be filed without prior Court approval"; thus, the
"further reply" filed by Plaintiff is prohibited as Plaintiff did not seek permission to do so.

1  that Plaintiff is suggesting that because Defendant Carrick has sent emails pertaining to the above,

2  those emails must contain information clarifying his expectations with respect to the policy at

3  issue. See id.  According to Plaintiff, if he had known about these emails, he would have sent out

4  additional discovery and included such request in his previous motion to compel. See id.

5  Defendant Carrick argues that he has "completely responded to the interrogatory" by "stating that

6  he made no efforts to clarify his expectations concerning a December 15, 2015 memorandum

7  because he did not believe that there was a need for clarification." Id., pg. 3. Additionally, he

8  argues that Plaintiff fails to provide facts to support his argument that any such emails exist

9  concerning any clarifications or expectations pertaining to the December 15, 2015 memorandum.

10  See ECF No. 72, pg. 3.

11        Defendant Carrick's response to the discovery request and what he states in his

12  opposition are not the same.  In response to the discovery request, he merely states that he does

13  not believe there was a need for clarification; while his opposition states that "he made no efforts

14  to clarify his expectations" ***because*** "he did not believe that there was a need for clarification."

15  The responsive, but missing, answer is ***what*** efforts were made—not ***why*** no efforts were made.

16  Therefore, Defendant Carrick has not fully responded to Plaintiff's interrogatory as to what

17  efforts were made.

18        Given that Defendant Carrick has stated, albeit in his opposition, that "he made no

19  efforts to clarify his expectations," there is nothing before the Court to indicate that such

20  information exists.  To the extent that Defendant Carrick learns that such information exists, he is

21  under an obligation to supplement his responses. See Fed. R. Civ. P. 26(e)(1) ("A party who has .

22  . . responded to an interrogatory, request for production, or request for admission—must

23  supplement or correct its disclosure or response  . . . if the party learns that in some material

24  respect the . . . response is incomplete or incorrect. . . .").  Signed discovery responses are

25  certifications that, to the best of the person's knowledge, information and belief formed after a

26  reasonable inquiry, the responses are correct.  See Fed. R. Civ. P. 26(g)(1)(B; Logtale, Ltd. v.

27  IKOR, Inc., 2013 WL 3967750, at *2 (N.D. Cal. 2013) (requiring counsel to be "proactive in

28  ensuring that his clients are conducting thorough and appropriate document searches").

While Plaintiff may be disinclined to trust Defendant Carrick's discovery response, mere distrust and suspicion regarding discovery responses do not form a legitimate basis to further challenge sufficient responses. See e.g., Gorrell v. Sneath, 292 F.R.D. 629, 632 (E.D. Cal. 2013); L.H. v. Schwarzenegger, No. S-06-2042 LKK GGH, 2007 WL 2781132, at *2 (E.D. Cal. 2007). Discrepancies between facts and evidence is not a basis to compel a further response or to attempt to force a party to change a response; rather, it is fodder for a party to attempt to impeach a witness or to contradict testimony at trial and/or dispositive motion.  See Jacobs, 2015 WL 3717542, at *8; see Hoffman, 2017 WL 5900086, at *8.  Because Defendant Carrick has not completely responded to Plaintiff's interrogatory, the Court grants Plaintiff's Motion 2 with respect to Defendant Carrick's response to Interrogatory Number 6 and orders Defendant Carrick to provide a further response to this request within thirty days of the date of this order.

b.      Defendant Posson

Plaintiff seeks a further response from Defendant Posson regarding Request for Production number 6.  Defendant Posson agreed to provide a further response, "as appropriate," after "reviewing the emails referenced by Plaintiff" and provided those further responses on June 16, 2022.  ECF Nos. 72, pg. 3 & 80, pgs. 1-2.  On June 29, 2022, Plaintiff filed a "further reply" arguing that Defendant Posson's further responses were deficient. See e.g., ECF No. 80, pgs. 1-2. Like above, because Defendant Posson has already served his further responses, Plaintiff's motion to compel further responses to Request for Production number 6 is moot.  Any argument by Plaintiff as to the sufficiency of Defendant Posson's response is not properly before the Court and thus, the Court declines to consider that matter here.  See footnote 2, above.

3.      Order Granting Plaintiff Leave to Serve Additional Discovery

On February 2, 2023, this Court ordered that discovery shall remain open subject to a later order rescheduling of pre-trial deadlines, including deadlines for completion of discovery and filing of dispositive motions.  See ECF No. 103. Therefore, because currently no discovery deadlines are pending, Plaintiff's request for an order granting him leave to serve three interrogatories and three requests for production as to Defendants Carrick and Posson is denied as

19

1  unnecessary.  Plaintiff may serve additional discovery on Defendants until such time as a

2  discovery deadline is established and Plaintiff complies with all Federal Rules of Civil Procedure.

3          4.      Order Extending Discovery Deadlines

4          This Court has already denied as unnecessary Plaintiff's request for an extension

5  of discovery deadlines given there is no operative scheduling order pertaining to deadlines for

6  discovery and dispositive motions.  See ECF No. 103.  Thus, the Court denies Plaintiff's request

7  for an extension of discovery deadlines in Motion 2.

8      **C.     Motion 3**

9          Plaintiff seeks an order compelling further discovery responses from Defendant

10 Carrick regarding Plaintiff's Request for Production of Documents, Set Three.  At issue is

11 Plaintiff's request for production number 1.

12          **Request for production no. 1:**  Plaintiff requests that Defendant Carrick
            produce any all e-mails that he sent, from 2012 to present, that discuss the
13          prescribing of, criteria for prescribing of, or policy relative to the
            prescribing of transition lenses. ECF No. 89, pgs. 2-3.
14

15          **Defendant Carrick's response:**  Objection. The request is overly broad
            as to time, unduly burdensome, and is not proportional to the needs of the
16          case. The request violates the attorney-client privilege as to
            communications between the Defendant and his counsel, and violates the
17          deliberative process privilege as to drafts of policies concerning
            prescribing transition lenses. The request also violates the privacy rights of
18          third-party inmates as to emails concerning transition lenses prescribed to
            them. A privilege log of documents withheld and/or redacted is attached.
19          Without waiving these objection, all responsive email sent by [Defendant
            Carrick] between January 1, 2015 and the present are being produced.
20          Defendant [Carrick] notes that he is not producing copies of emails in
            which he was a recipient, only, as those emails are beyond the scope of
21          this request. Id.

22          Plaintiff addresses each of Defendant Carrick's objections in turn.  See ECF No.

23 81, pgs. 3-6.  First, as to Defendant Carrick's objection that the request is overly broad as to time,

24 Plaintiff argues that the timeframe is not overly broad because he needs an "accurate portrait of

25 the effects" of Defendant Carrick's policy in order to ascertain how "medical necessity" was

26 previously defined prior to the issuances of the December 15, 2015 memorandum. Id., pg. 3.

27 Second, Plaintiff argues that the request is not unduly burdensome, as Defendant Carrick claims,

28 because the documents have already been identified and collected by CCHCS Litigation Support

in response to his PRA request; the result of such inquiry was 67 pages of emails sent from Defendant Carrick that were responsive to Plaintiff's request and which were deemed not exempt from disclosure.  See id., pgs. 3-4, see also ECF No. 91, pgs. 16-17.  Third, Plaintiff maintains that he is not seeking disclosure of emails designated as attorney-client privileged, but claims that emails to and from Litigation Support are not covered under this privilege.  See ECF No. 81, pg. 4.

Fourth, Plaintiff challenges Defendant Carrick's "deliberative process" privilege designation on the basis that administrative exemptions under FOIA are not the same as discovery privileges.  See id., pg. 5.  Plaintiff argues that his need to demonstrate that Defendant Carrick's "underground policy has prevented CDCR doctors from dispensing transition lenses and tinted prescription lenses outweighs any governmental interest in non-disclosure" as "Defendant Carrick has not demonstrated any willingness to provide information in any alternative form."  Id. Thus, according to Plaintiff, certain emails identified on Defendant Carrick's privilege log should be produced.  See id.  Alternatively, Plaintiff requests an in camera review of such documents to determine how much of the documents "touch on legality" and "how much of the contents track the December 15, 2015 memorandum so as to constitute a waiver of privilege" as well as what portions of the document can be "segregable from the rest." Id., pg. 6.  Fifth, Plaintiff argues that the privacy rights of third party inmates should be protected and that private information can be redacted and the documents produced.  See id.

Lastly, Plaintiff argues that the documents requested are proportional to the case because some of the emails produced show that CDCR doctors are in a position of denying transition lenses, even when ophthalmologists order or justify them for inmates.  See id., pg. 7. Plaintiff asserts that, despite Defendant Carrick's repeated claims that no documents exist that discuss "actual, or potential clinical case exceptions for transition lenses" relative to the December 15, 2015 memorandum, shortly after the issuance of the memorandum, CDCR doctors began sending emails asking which conditions qualify and requesting a list of conditions for which transition lenses would be authorized.  ECF Nos. 81, pgs. 7-8; see e.g., 83, pgs. 8-11, 83-1, pgs. 9-11.

1    As to Defendant Carrick's production of documents, Plaintiff argues that

2    Defendant Carrick produced 14 pages of emails but only 7 were sent from Defendant Carrick;

3    thus, since the PRA response identified 67 pages of responsive emails sent by Defendant Carrick,

4    he failed to produce "at least 60 pages of emails" that are "germane to" Plaintiff's request. Id., pg.

5    7.  Plaintiff also argues that in Defendant Carrick's prior discovery responses, see Motion

6    2(1)(1)(i), above, Defendant Carrick responded that records of committee meetings are only kept

7    for three years, and that since the committee meeting occurred on October 26, 2015, the records

8    of that meeting would not have been in existence after October 26, 2018—long before Defendant

9    Carrick's response in 2021.  See ECF Nos. 72, pg. 4 & 69, pg. 4.  However, Plaintiff notes that

10   Defendant Carrick produced a privilege log stating he is in possession of meeting minutes from

11   2015; thus Defendant Carrick's response "demonstrates a pattern of lying." ECF No. 81, pg. 10.

12   Plaintiff remarks that conspicuously missing from the list of meeting minutes on

13   the privilege log are the minutes from October 26, 2015.  See id.  Plaintiff argues that if

14   Defendant Carrick is in possession of all the other meeting minutes leading up to October 26,

15   2015, "there is no reason to suppose that the Committee's minutes [from October 26, 2015] alone

16   were destroyed after 3 years" unless Defendant Carrick "intentionally destroyed" the evidence

17   that led to the creation of the December 15, 2015 memorandum.  Id.

18   Defendant Carrick responds that (1) he has produced all emails sent by him, which

19   mention the criteria for prescribing and the policy relative to prescribing transition lenses;

20   (2) Plaintiff maintains that he is not requesting those emails designated as attorney-client

21   privileged; (3) he has produced redacted records pertaining to a third-party inmate responsive to

22   Plaintiff's request; and (4) a privilege log has been provided identifying those emails withheld

23   based on the attorney-client and deliberative process privileges.  See ECF No. 89, pg. 1.

24   Defendant Carrick maintains that, even though he did not send any emails concerning prior drafts

25   of the December 15, 2015 memorandum concerning the policy for prescribing transition lenses, to

26   the extent any such drafts exist, such drafts would be protected under the deliberative process

27   privilege.  See id.

28   With respect to Defendant's objections, Defendant Carrick argues that searching

for an additional two and one-half years prior to the issuance of the policy is overly broad, and would pose an undue burden on Defendant and counsel, which is not proportional to the needs of the case.  See id., pg. 3. Defendant then continues that despite such objections, counsel has reviewed the 67 emails provided in response to Plaintiff's PRA request and that the PRA response is in error; the inquiry included emails sent or received by Defendant Carrick, which is broader than Plaintiff's request. See id.  Based on that review, Defendant Carrick asserts no emails were sent by Defendant Carrick between January 1, 2012 and December 31, 2014 so there are no other emails responsive to produce. See id.  Additionally, as to Plaintiff's argument regarding the missing meeting minutes of October 26, 2015, Defendant Carrick responds that he did not send an email containing the minutes held on October 26, 2015; as such, no responsive documents exist. See id., pg. 5.

As to those documents protected under the attorney-client privilege, Defendant Carrick argues that Plaintiff has acknowledged that he is not requesting this Court to compel production of such emails.  See id., pg. 4.  With respect to Defendant Carrick's objection as to third party privacy rights, Plaintiff has requested any private and confidential information be redacted and produced; Defendant Carrick responds that he has produced the responsive records redacted. See id., pg. 4.

As to Defendant Carrick's assertion of the deliberative process privilege, he attests that none of the documents sought to be protected under the deliberative process privilege were actually sent by Defendant Carrick.  See id., pg. 4.  Defendant Carrick contends that, since the emails at issue here were not sent by Defendant Carrick, they are not responsive to Plaintiff's request.  See id., pgs. 4-5.  However, to the extent that Plaintiff argues that these documents should be produced, as he does, Defendant Carrick maintains that such documents were objected on the grounds of, and are protected under, the deliberative process privilege.  See id.

On reply, Plaintiff argues, generally, that the list of emails Defendant Carrick submitted in support of his claim that no emails were sent by him prior to December 31, 2014 is "fabricated"; the Deputy Attorney and CCHCS have colluded and "illegally conspir[ed] to deprive Plaintiff of said documents"; and the emails reviewed by Defendant Carrick are really 67

23

1   pages, not emails, and there are 113 attachments to the 67 emails—so the list is "fraudulent."

2   ECF No. 91, pgs. 1-4.  Plaintiff further argues that, with respect to inmate privacy, he has not

3   received an email dated June 22, 2016, in any form, so Defendant Carrick's claim that such

4   document has been produced is false.  See id., pg. 5.

5           Defendant Carrick's objections that Plaintiff's request are overly broad as to time,

6   unduly burdensome, and not proportional to the needs of the case are overruled.  Defendant

7   Carrick has already reviewed the 67 emails identified by the PRA response and determined no

8   emails were sent by him prior to January 1, 2015.  Whether the sum of documents is 67 pages or

9   67 emails, neither is unduly burdensome nor out of proportion to the needs of the case.  Hence,

10  requiring Defendant Carrick to engage in this exercise would be pointless, as he has already

11  performed the review and produced responsive documents.  Defendant Carrick's objection that

12  communications between Defendant Carrick and Defense Counsel are protected under the

13  attorney-client privilege is sustained.  Defendant Carrick did not, however, respond to Plaintiff's

14  contention that documents sent to or from litigation support are considered protected.  In any

15  event, such emails identified on the privilege log do not appear to be responsive to Plaintiff's

16  request at issue here, as neither emails were sent by Defendant Carrick.  See ECF No. 3, pg. 6.

17  Defendant Carrick's objection that Plaintiff's request violates third party privacy rights is

18  sustained but moot as Defendant Carrick has produced such records in redacted form, as Plaintiff

19  requested.

20          Finally, with regard to Defendant Carrick's objection that certain emails are

21  protected under the deliberative process privilege, such objection is denied as unnecessary.  The

22  privilege log identifies certain emails designated as protected by the deliberative process

23  privilege, but, as indicated on the privilege log, none was sent by Defendant Carrick; thus, they

24  are not responsive to the request at issue here.  Such objection can be raised again with respect to

25  any future requests where such documents are responsive to Plaintiff's request or are the subject

26  of a motion to compel.

27          As a preliminary matter, Plaintiff's claims that Defense Counsel has "fabricated"

28  evidence before the Court and engaged in a course of conspiracy and collusion are serious

1    accusations, which this Court does not take lightly.  Plaintiff has provided no evidence that would

2    suggest such claims to be true.  Plaintiff's speculation is insufficient.  Furthermore, any purported

3    discovery abuse based on bad faith is not before the Court.

4                As to the substance of Defendant Carrick's response, he has responded to

5    Plaintiff's request.  Regarding Plaintiff's claim that he seeks an email dated June 22, 2016, which

6    Defendant has not yet produced, the Court notes that Plaintiff's own exhibits include a June 22,

7    2016 email regarding a third-party inmate.  See ECF No. 83, pgs. 14-17.  As to Plaintiff's claims

8    pertaining to the October 26, 2015 meeting minutes, the Court has determined, above, that

9    meeting minutes are not responsive to the requests for production currently before the Court.  If

10   Defendant Carrick states that he did not send an email attaching the October 26, 2015 meeting

11   minutes, then there is nothing for Defendant Carrick to produce in this regard.[3] This Court cannot

12   compel Defendant Carrick to produce documents that do not exist. Baker v. Moore, No. 1:12-cv-

13   00126-LJO-SAB, 2016 WL 796504, at *6 (E.D. Cal. Mar. 1, 2016) ("Defendant cannot be

14   compelled to provide copies of documents that do not exist."); Lopez v. Florez, No. 1:08-CV-

15   01975 - LJO, 2013 WL 1151948, at *3 (E.D. Cal. Mar. 19, 2013) (finding court cannot force a

16   party to produce documents he does not have).

17               As to Plaintiff's speculation that there must be additional documents, given the

18   PRA response, Defendant Carrick has stated that he has produced those documents responsive to

19   this request. Presumably, Defendant has produced all responsive documents and there is nothing

20   for the Court to compel.  See McGinnis v. Atkinson, No. 1:11–cv–01337 LJO JLT (PC), 2012

21   WL 1944801, at *3 (E.D. Cal. May 29, 2012) (denying motion to compel where defendant

22   responded it had provided all responsive documents).  Signed discovery responses are

23   _____

24        [3]     The Court is concerned, however, as to Defendant Carrick's argument that records
     of Committee meetings are only kept for three years, and "since the committee meeting occurred
25   on October 26, 2015, the records of that meeting would not have been in existence after October
     26, 2018." See ECF Nos. 72, pg. 4 & 69, pg. 4.  Yet, the Declaration of G. Song filed in support
26   of his opposition regarding the deliberative process privilege states "I reviewed the Durable
     Medical Equipment Committee [draft] minutes [for] . . . October 26, 2015 . . . ." ECF 89, pg. 20.
27   Should these minutes be responsive to any of Plaintiff's discovery requests, the Court reminds
     Defendant Carrick of his obligation to supplement his responses, accordingly. See Fed. R. Civ. P.
28   26(e)(1).

certifications that, to the best of the person's knowledge, information and belief formed after a reasonable inquiry, the responses are correct.  See Fed. R. Civ. P. 26(g)(1)(B); Logtale, Ltd., 2013 WL 3967750, at *2 (requiring counsel to be "proactive in ensuring that his clients are conducting thorough and appropriate document searches").  Mere distrust and suspicion regarding discovery responses do not form a legitimate basis to further challenge sufficient responses. See e.g., Gorrell, 292 F.R.D. at 632; L.H. v. Schwarzenegger, 2007 WL 2781132, at *2.  Discrepancies between facts and evidence is not a basis to compel a further response or to attempt to force a party to change a response; rather, it is fodder for a party to attempt to impeach a witness or to contradict testimony at trial and/or dispositive motion.  See Jacobs, 2015 WL 3717542, at *8; see Hoffman, 2017 WL 5900086, at *8.

Therefore, no further response to this request is required by Defendant Carrick and Plaintiff's Motion 3 as to request for production of documents, set three, number 1 is denied.

To the extent the Parties seek an in-camera review from this Court, such request is denied. In camera reviews, which are burdensome and intrusive, are not routinely conducted and they are not available to a litigant merely seeking reassurance regarding the sufficiency of the response received. See U.S. v. Zolin, 491 U.S. 554, 569-75 (1989); In re Grand Jury Investigation, 974 F.2d 1068, 1074-75 (9th Cir. 1992); Scott v. Palmer, No. 1:09-CV-01329-LJO, 2014 WL 6685810, at *7 (E.D. Cal. Nov. 26, 2014).  Here, Defendant Carrick has certified that all non-privileged documents responsive to Plaintiff's request have been produced; as such, Plaintiff is required to accept his response.  No grounds meriting an in camera review have been identified. Therefore, to the extent the parties seek an in camera review, such request is denied.

### III.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion to compel discovery and for an award of sanctions, ECF 66, is **denied**.

2.    Plaintiff's motion to compel discovery, ECF No. 69, is **granted in part** and **denied in part**, as follows:

a. The Court **grants** Plaintiff's motion as to Plaintiff's Request for Production No. 1.  Defendant Carrick is ordered to:  (1) produce responsive documents to this request, to the extent such documents exist; (2) supplement his response with information as to who has possession, custody, or control of such documents so that Plaintiff may act accordingly, if such document exist, or (3) supplement his response to indicate that after a reasonable and diligent inquiry, no such documents exist because they never existed or have been destroyed. Defendant Carrick shall serve further responses to this request within thirty days of the date of this order.

b. The Court **denies** Plaintiff's motion with respect to requiring Defendant Carrick to further respond to Interrogatory number 10.

c. The Court **grants** Plaintiff's motion with respect to Defendant Carrick's response to Interrogatory Number 6 and orders Defendant Carrick to provide a further response to this request within thirty days of the date of this order.

d. The Court **denies** Plaintiff's motion to compel further responses from Defendant Posson to Request for Production numbers 5, 6, 7, and 12.

e. The Court **denies** Plaintiff's request for leave to serve three interrogatories and three requests for production as to Defendants Carrick and Posson.

f. The Court **denies** as unnecessary Plaintiff's request for an extension of discovery deadlines.

3. Plaintiff's motion to compel discovery, ECF No. 81, is **denied.**

So Ordered:

Dated:  March 13, 2023

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

27